**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**West Virginia Division of Corrections and Rehabilitation,**
**Employer Below, Petitioner**

**v.)**     **No. 24-238**  (JCN: 2019012901)
                    (ICA No. 23-ICA-493)

**Mike Tencer,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner West Virginia Division of Corrections and Rehabilitation ("WVDCR") appeals the February 27, 2024, memorandum decision of the Intermediate Court of Appeals of West Virginia ("ICA"). *See West Virginia Department of Corrections*[1] *v. Tencer*, No. 23-ICA-493, 2024 WL 1588836 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision). Respondent Mike Tencer filed a response.[2] The issue on appeal is whether the ICA erred in affirming the October 11, 2023, decision of the West Virginia Workers' Compensation Board of Review, which reversed the claim administrator's order granting respondent a 12% permanent partial disability ("PPD") award and, instead, granted him a 22% PPD award. Upon our review, we determine that oral argument is unnecessary and that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for vacation in a memorandum decision rather than an opinion. *See* W. Va. R. App. P. 21.

On December 11, 2018, Mr. Tencer sustained a compensable injury when he fell from a ladder and landed on his back and head. A CT scan of the chest, abdomen, and pelvis demonstrated nondisplaced left L2, L4, and L5 transverse process fractures and a left iliac crest hematoma with active bleeding. A CT scan of the cervical spine indicated mild generalized degenerative changes with no acute findings. On December 27, 2018, the claim administrator held the claim compensable for a laceration to the back of the head; left shoulder contusion; contusion to bilateral elbows; transverse fractures of the L2, L4, and L5; and a hematoma to the left hip/buttocks.

---

[1] The West Virginia Department of Corrections is now known as the West Virginia Division of Corrections and Rehabilitation.

[2] The petitioner is represented by counsel Steven K. Wellman and James W. Heslep, and the respondent is represented by counsel Christopher J. Wallace.

On May 17, 2019, Mr. Tencer underwent an MRI which revealed significant multilevel disc disease causing spinal and neural foraminal stenosis, moderate bilateral neural foraminal stenosis at C6-C7 mild to moderate spinal stenosis; moderate right neural foraminal stenosis at C5-C6; moderate spinal stenosis and moderate right neural foraminal stenosis at C4-C5; moderate left-sided spinal stenosis, severe left-sided neural foraminal stenosis, and moderate right sided neural foraminal stenosis at C3-C4. Subsequently, on June 18, 2019, the claim administrator issued a Notice of Secondary Conditions adding various conditions to the claim, including cervical radiculopathy with right C6 and bilateral C7 poly radiculopathy. Mr. Tencer underwent several surgeries that were authorized by the claim administrator. First, "hemilaminectomies with keyhole foraminotomies at the right C5-C6 level and bilaterally at the C6-C7 level," were performed on January 1, 2020. On July 1, 2020, Mr. Tencer underwent a second surgery, which consisted of an anterior cervical discectomy and fusion at the C5-C6 and C6-C7 levels.

Jennifer L. Lultschik, M.D., performed an independent medical evaluation of Mr. Tencer on March 10, 2021. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*") and West Virginia Code of State Rules § 85-20 (2006), Dr. Lultschik assessed 0% whole person impairment ("WPI") for the laceration of the head; 0% WPI for the unspecified head injury; 0% WPI for the left elbow contusion; 0% WPI for cervical radiculopathy; and 15% WPI for transverse fractures of L2, L4, and L5, unspecified fracture of the lumbar vertebra, and contusion of the low back and pelvis. By order dated March 25, 2021, the claim administrator granted Mr. Tencer a 15% PPD award based on Dr. Lultschik's report.

After undergoing a posterior cervical decompression at C3, C4, and C5, as well as partial C6, and posterior cervical fusion surgery at C3-T1, Mr. Tencer was seen by Dr. Lultschik for a second IME on July 18, 2022. Using the AMA *Guides*, Dr. Lultschik assessed the same amount of WPI as it pertained to Mr. Tencer's laceration of the head; unspecified head injury; left elbow contusion; transverse fractures of L2, L4, and L5; unspecified fracture of the lumbar vertebra; and contusion of the low back and pelvis as she had in her 2021 evaluation, Dr. Lultschik provided a new impairment rating for the cervical radiculopathy diagnosis. Specifically, Dr. Lultschik found that Mr. Tencer was entitled to 17% WPI for the decompressive surgery and two fusion surgeries and five levels of operative intervention per Table 75 of the AMA *Guides*. Dr. Lultschik also found that Mr. Tencer had 12% WPI related to range of motion deficits in the cervical spine. Combining the two impairments resulted in 27% WPI for the diagnosis of cervical radiculopathy. Dr. Lultschik then applied West Virginia Code of State Rules § 85-20 and found that Mr. Tencer qualified for Cervical Category IV, allowing for 25-28% WPI, requiring no further adjustment.

Regarding apportionment, Dr. Lultschik noted Mr. Tencer's preexisting history of multilevel degenerative disc disease causing spinal and neural foraminal stenosis at multiple levels and the lack of evidence of any acute injury to the cervical spine on the date of injury. Dr. Lultschik opined that Mr. Tencer's reported symptoms were difficult to explain and were more likely than not related to his significant preexisting paresthesia and peripheral polyneuropathy. Accordingly, Dr. Lultschik apportioned 13% to Mr. Tencer's preexisting polyneuropathy and chronic degenerative cervical changes and attributed 14% to the compensable injury. Dr. Lultschik acknowledged that her present findings differed from her findings in the 2021 IME but noted that

Mr. Tencer had exhibited reduced range of motion in the cervical spine as compared to the prior IME, which was directly attributable to the authorized multilevel posterior fusion.

Using the Combined Values Chart of the AMA *Guides*, Dr. Lultschik combined all of the impairments for the accepted diagnoses and reached a total of 27% WPI. Dr. Lultschik subtracted the 15% PPD award Mr. Tencer had previously received and recommended that he be granted an additional 14% PPD award. However, Dr. Lultschik issued an addendum in which she noted an error in her prior calculation and stated that Mr. Tencer would be entitled to an additional 12% PPD award, not a 14% PPD award. The claim administrator issued a corrected order dated September 13, 2022, in which it granted Mr. Tencer a 12% PPD award rather than the 14% previously granted based on Dr. Lultschik's report. Mr. Tencer protested the claim administrator's decision.

On November 3, 2022, Mr. Tencer underwent an independent medical evaluation performed by Bruce Guberman, M.D. Dr. Guberman noted that he was asked to evaluate the cervical spine only and, using the AMA *Guides*, assessed 17% WPI related to Mr. Tencer's surgeries per Table 75, 11% WPI for range of motion abnormalities, and 1% WPI for sensory deficits. Using the Combined Values Chart, Dr. Guberman reached a total of 27% WPI. Dr. Guberman then applied W. Va. C.S.R. § 85-20 and found that Mr. Tencer qualified for Cervical Category IV, allowing for 25-28% WPI, requiring no further adjustment. Dr. Guberman noted Mr. Tencer's history of a radiculopathy diagnosis, but attributed it to the compensable injury. Dr. Guberman opined that nothing should be apportioned for Mr. Tencer's peripheral neuropathy, and he opined that degenerative changes alone on imaging studies of the cervical spine "would not entitle [Mr. Tencer] to an impairment rating based on either the range-of-motion model nor Table 85-0-E." However, because Mr. Tencer had a history of neck pain in the past, Dr. Guberman apportioned 5% WPI to preexisting conditions and attributed 22% impairment to the injury, which was his final recommendation. Dr. Guberman did not address Mr. Tencer's prior lumbar spine award.

By order dated October 11, 2023, the Board of Review reversed the claim administrator's September 13, 2022, order and granted Mr. Tencer an additional 22% PPD award in accordance with Dr. Guberman's report. The Board of Review found that the evidence indicated that apportionment should occur in this case because the records established preexisting cervical spine conditions. The main difference between the reports of Dr. Lultschik and Dr. Guberman was how much to apportion due to preexisting conditions. Ultimately, the Board of Review concluded that Dr. Lultschik's report was not reliable or supported by the evidence of record. Specifically, it was noted that Dr. Lultschik acknowledged that cervical radiculopathy is a compensable condition in the claim, that Dr. Lultschik opined that 17% WPI was warranted based on Mr. Tencer having undergone three surgeries alone, and that Dr. Lultschik determined that Mr. Tencer's range of motion deficits were attributable to the surgeries. Based on these findings, the Board of Review determined that Dr. Lultschik's opinion that half, or roughly 13%, was attributable to preexisting conditions was not supported by the record. In contrast, the Board of Review found Dr. Guberman's recommendation that 5% WPI should be attributed to preexisting degenerative changes to be reliable and supported by the evidence. As such, the Board of Review reversed the

claim administrator's order and granted Mr. Tencer a 22% PPD award based upon Dr. Guberman's recommendation.

In a memorandum decision dated February 27, 2024, the ICA affirmed the Board of Review's October 11, 2023, decision granting Mr. Tencer a 22% PPD award. The ICA reasoned that Dr. Guberman's values combined to 27% and needed no further adjustment when applying West Virginia Code of State Rules § 85-20, with 5% apportioned to preexisting conditions. The ICA also noted that the Board of Review determined that Dr. Guberman's apportionment was more persuasive than Dr. Lultschik's decision to apportion 13% WPI, approximately half of her total recommendation, to preexisting conditions. The ICA concluded that the Board of Review was not clearly wrong to rely on Dr. Guberman's report, especially considering that cervical radiculopathy is a compensable condition in the claim, the related surgeries were authorized in the claim, and that, while Mr. Tencer had a documented history of preexisting conditions, he was able to maintain employment and had no significant loss of activities of daily living before the underlying injury.

In considering arguments about the Combined Values Chart, the ICA found no merit in WVDCR's assertion that the Board of Review erred in relying on Dr. Guberman's report when he did not combine the impairments for Mr. Tencer's lumbar and cervical spine. The ICA concluded that Mr. Tencer failed to meet its burden, and stated, "While the Combined Values Chart must be applied when rating multiple regions of the body at the same time, none of the authority cited by WVDCR requires application of the Combined Values Chart when subsequently rating another region." The ICA noted that Mr. Tencer had already been granted a PPD award for his lumbar spine. When the time came to evaluate Mr. Tencer for his cervical spine impairment following his surgery, Dr. Guberman noted that he was asked to rate only Mr. Tencer's cervical spine. The ICA ultimately concluded that Dr. Guberman did not err in the manner in which he assessed Mr. Tencer and, consequently, found that the Board of Review did not err in relying on Dr. Guberman's report. Finding no error in the Board of Review's decision, the ICA affirmed July 17, 2023, order.

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). West Virginia Code § 23-4-9b provides that, unless there is a permanent total disability, a preexisting disease or injury "shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury." In Syllabus Point 6 of *Duff*, we held that

> [u]nder West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

250 W. Va. at 512, 905 S.E.2d at 530.

On appeal to this Court, WVDCR argues that the Board of Review's decision was clearly wrong and contrary to the preponderance of the evidence because the degree of whole person impairment is to be calculated upon principles of the AMA *Guides*, including the Combined Values Chart. As such, the adoption of Dr. Guberman's impairment rating for the cervical spine, without application of the Combined Values Chart, is wrong on its face. In addition, WVDCR contends that the ICA improperly dismissed its argument regarding apportionment for preexisting impairment on the grounds that cervical radiculopathy is a compensable diagnosis, which disregards the fact that any given diagnosis may be both preexisting and compensable. Finally, WVDCR asserts that a clear preponderance of the evidence supports that cervical radiculopathy is a preexisting condition, which may or may not have been aggravated or worsened by the compensable injury, and there is sufficient evidence upon which the preexisting impairment could be definitely ascertained. Mr. Tencer counters by arguing that the Board of Review and ICA were well within their discretion to honor Dr. Guberman's 5% apportionment for preexisting impairment. Mr. Tencer also contends that the reductions made by Dr. Lultschik are not well supported, and therefore not as reliable as the rating of Dr. Guberman. In regard to the use of the Combined Values Chart, Mr. Tencer asserts that nothing prevents the claims administrator from combining the 22% for the cervical spine with the earlier 15% awarded for the low back, to reach an impairment of 34%.

Following this Court's decision in *Duff*, a new method for apportioning definitely ascertained impairments to multiple body parts under West Virginia Code § 23-4-9b was established. *See* Syl. Pt. 2, *Logan-Mingo Area Mental Health, Inc. v. Lester,* 250 W. Va. 219, 902 S.E.2d 768 (2024). In *Lester*, we held:

> When a claimant has preexisting, definitely ascertained impairments to multiple body parts and then sustains new compensable injuries that affect the previously impaired body parts, the proper method for apportioning the preexisting impairments is to first determine the claimant's total, unapportioned whole-person impairment using the Combined Values Chart of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). Then, the total amount of the claimant's preexisting impairment that has been definitely ascertained must be deducted from the total, unapportioned whole-person impairment to calculate the amount of the claimant's Permanent Partial Disability award.

250 W. Va. at ---, 902 S.E. 2d at 769, Syl. Pt. 2.

In the case at hand, the evidence provides that Mr. Tencer has an undisputed history of preexisting medical conditions which contributed to his overall impairment. Dr. Lultschik and Dr. Guberman both found 27% whole person impairment for the cervical spine, before apportionment. However, there remains a question as to whether the preexisting conditions contributed to Mr. Tencer's overall impairment after the compensable injury, and the amount of impairment attributable to those preexisting conditions. Because the ICA's decision was issued prior to this Court's holding in *Duff*, we vacate the decisions of both the ICA and the Board of Review and

remand the case to the Board of Review for further development of the evidentiary record and analysis under *Duff* and *Lester*.

Vacated and remanded with directions.

**ISSUED: January 22, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice C. Haley Bunn
Justice Charles S. Trump IV

**DISSENTING:**

Justice Tim Armstead

ARMSTEAD, Justice, dissenting:

The majority determines that under the Court's holding in *Duff v. Kanawha Cnty. Comm'n,* 250 W. Va. 510, 905 S.E.2d 528 (2024), the February 27, 2024, memorandum decision of the Intermediate Court of Appeals of West Virginia[1] must be vacated and the case must be remanded for further evidentiary development. *See* Syl. Pt. 6, *Duff* ("Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant 'has a definitely ascertainable impairment resulting from' a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s)."). While I agree that applying our ruling in *Duff* leads to this result, I dissent because I disagree with the Court's holding in *Duff*. As I explained in my separate opinion in that case:

> the majority's interpretation of West Virginia Code § 23-4-9b is not supported by the plain language of the statute or by our long-standing recognition that a workers compensation claimant has the burden of proof, [therefore] I disagree with the majority's ruling that the employer bears the burden to prove (1) that the claimant has a definitely ascertainable impairment resulting from a preexisting condition; (2) that the preexisting condition contributed to the claimant's overall impairment after the compensable injury; and (3)

---

[1] *See West Virginia Department of Corrections v. Tencer*, No. 23-ICA-493, 2024 WL 1588836 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision).

6

the precise degree of impairment that is attributable to the preexisting condition.

By shifting the burden to the employer, the majority is treating apportionment as an affirmative defense. West Virginia Code § 23-4-9b does not contain any language providing that apportionment should be treated as an affirmative defense that the employer is responsible for asserting.

*Duff*, 250 W. Va. at ____, 905 S.E.2d at 542-43 (Armstead, C.J., concurring, in part, and dissenting, in part).

By applying our ruling in *Duff* to the present case, I believe that this Court continues to misapply the plain language of West Virginia Code § 23-4-9b. Therefore, I dissent.